# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 8, 2013

## MARCUS NORWOOD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 09-06261     James Beasley, Jr., Judge**

---

**No.  W2012-00754-CCA-R3-PC  – Filed March 13, 2013**

---

Petitioner, Marcus Norwood, entered an *Alford* plea to second degree murder in Shelby County in October of 2010, with an agreed sentence of twenty-five years.  Subsequently, Petitioner filed a petition for post-conviction relief in which he alleged that he received ineffective assistance of counsel which adversely affected his decision to enter a guilty plea.  The post-conviction court denied relief.  Petitioner appealed.  After a review of the evidence, we conclude that Petitioner has failed to establish that counsel's performance was deficient or that the voluntariness of the guilty plea was affected by the actions of counsel.  Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Marcus Norwood.

Robert E. Cooper, Jr., Attorney General and Reporter, Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General, and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

Petitioner was indicted by the Shelby County Grand Jury in September of 2009 for first degree murder.  In October of 2010, Petitioner entered an *Alford* plea to the murder of Earnest Jackson in exchange for a second degree murder conviction and a twenty-five year sentence.

On June 9, 2011, Petitioner filed a pro se petition for post-conviction relief. In the petition, he alleged that he received ineffective assistance of counsel. Specifically, Petitioner complained that trial counsel failed to: (1) see if there was evidence against Petitioner prior to the indictment; and (2) investigate Petitioner's criminal history prior to his guilty plea listing him as a violent offender. After counsel was appointed, an amended petition was filed, listing the following grounds for relief: (1) ineffective assistance of counsel due to counsel's failure to investigate the case, communicate with Petitioner, and prepare for trial; and (2) Petitioner's guilty plea was involuntary.

The trial court held a hearing on the petition. At the hearing, the transcript of the guilty plea hearing was admitted as an exhibit. The transcript listed the factual basis for Petitioner's plea as follows:

[O]n [December] 16th of 2008, officers of the Memphis Police Department were called to the University Cabana Apartments here in Shelby County. When they arrived, they found [the victim] in that apartment building in Apartment Number 5. He had suffered five stab injuries, which resulted in his death and a shell casing on the scene indic[a]ted that he had had a weapon fired at him. Within the hour, officers were contacted by [Petitioner's] friends and family members stating that he wished to turn himself in. He did turn himself in.

He gave a statement to the police indicating that he had gone to the apartment complex, an argument had ensued between him and the victim, . . . . [Petitioner's] version of events was that there was a struggle at which point the victim, . . . , was stabbed. For the record, [the victim] suffered five stab injuries and [Petitioner] had no injuries at the time the police took his statement one hour after [the victim's] death.

Trial counsel explained, at the guilty plea hearing, that Petitioner felt it was in his "best interest at his age" to enter the guilty plea. The trial court questioned Petitioner thoroughly prior to the entry of the plea. The plea was accepted by the trial court.

At the post-conviction hearing, trial counsel testified that at the time he represented Petitioner he had more than ten years of experience as an assistant public defender. He was appointed to represent Petitioner, requested discovery, and provided Petitioner with a copy of the documents. Trial counsel assessed the case and surmised that one of the largest obstacles would be overcoming Petitioner's confession. Trial counsel anticipated going to trial on the first degree murder charge but Petitioner asked trial counsel to explore a plea

agreement. The prosecutor agreed to a guilty plea to second degree murder with a twenty-five year sentence.

When trial counsel first informed Petitioner about the plea offer, Petitioner was "reluctant" because he thought that twenty-five years was too long and he should get "around ten years" for the crime. Trial counsel explained to Petitioner that if they got a trial date set in the case "there was no more possibility of a deal." Trial counsel opined that Petitioner was "in denial" about the severity of the charge and did not think it was even remotely possible for Petitioner to get a deal that would lead to a mere ten years in jail when someone died as a result of Petitioner's actions. Trial counsel "thought the deal was good." Petitioner gave trial counsel permission to discuss the deal with his family; Petitioner's mother encouraged him to take the plea agreement.

As part of the trial process and negotiations of the plea agreement, trial counsel met with Petitioner several times. These included at least five visits at the jail and about six times in court. Petitioner explained the facts to trial counsel, claiming that he went to talk to his ex-girlfriend and was confronted by the victim. When they got into an argument, the victim grabbed a knife. Petitioner claimed that he got the knife away and stabbed the victim. When the victim came toward Petitioner, Petitioner took out his gun and shot the floor.

Trial counsel thought the possibility of getting convicted of a lesser included offense at trial was slim and that the self-defense theory advanced by Petitioner was weak. Trial counsel was also concerned about potential testimony by Petitioner's ex-girlfriend about their history of domestic violence. Trial counsel admitted that he stopped interviewing witnesses in preparation for trial when plea negotiations became imminent.

Petitioner testified about his dissatisfaction with trial counsel's representation. He thought that the proper strategy was one of self-defense but admitted that it would be difficult under the circumstances. The day prior to the guilty plea, Petitioner sent trial counsel a letter in which he claimed that twenty-five years was "more time" than he "deserve[s]" for the crime but that he would accept the plea agreement because it was in his best interest." He asked trial counsel "to sign under the Alford plea." Petitioner felt that trial counsel did not put any effort into his case and claimed that he pleaded guilty because he did not have a choice. Petitioner thought that he should have gotten "manslaughter at the worst."

Petitioner claimed that trial counsel met with him three times at the jail and twice in court prior to the plea. Further, he claimed that trial counsel never talked about lesser included offenses or the possibility of a plea. Petitioner also stated that he received discovery but that trial counsel did not review the packet with him. Petitioner claimed that the only advice trial counsel gave him was to take the plea deal. Petitioner denied that it was his idea

to seek a plea deal. Petitioner thought that twenty-five years was "too much time" and that he even asked trial counsel to remove himself from his case.

On the day of the plea agreement, trial counsel met with Petitioner and reviewed the plea. Petitioner was described as somewhat hostile, and stated that his attorney did not "give a damn" about him. Petitioner claimed he "didn't have [anybody] to really try to help me for a defense, so [he] just gave in and signed."

Arcaya Love, Petitioner's ex-girlfriend, testified at the hearing. She did not recall being interviewed by police or by trial counsel. She could not recall a lot of the details surrounding the incident because she had since been involved in an auto accident in which she sustained a serious head injury. Ms. Love was able to recall various incidents of domestic violence, one in particular during which Petitioner attacked her when he learned she was pregnant with the victim's child. Petitioner attacked her in an attempt to cause her to miscarry. Petitioner was trying to reconcile with Ms. Love at the time that the victim was killed. Ms. Love testified that Petitioner had changed and that she was not afraid of him. She admitted that he was the father of her children.

At the conclusion of the proof, the post-conviction court accredited the testimony of trial counsel and found that Petitioner failed to prove the allegations of ineffective assistance of counsel and/or an involuntary guilty plea by clear and convincing evidence. Specifically, the post-conviction court stated that there was "nothing to indicate . . . that [trial counsel] didn't thoroughly confer with [Petitioner] and discuss[ ] these issues with him, advise[ ] him of what the potential of what was going to happen. . . ." The post-conviction court was:

> not convinced, based upon everything . . . that [trial counsel] had failed to do his job, to adequately advise and investigate this case, to adequately tell [Petitioner] what his potential punishment would be, should he be convicted. What the likelihood of conviction [w]as. What the likelihood of acquittal was. What the likelihood of a reduced charge was.
>
> . . . .
>
> But, it is what it is and in this case it was a second degree murder, which is a very serious violent offense and I find that [Petitioner] freely and voluntarily entered his guilty plea with full knowledge of what to anticipate what could happen to him if he went to trial, the rights he was willing to give up.
>
> I don't find that he was coerced in any way to enter this guilty plea. I don't find that [trial counsel's] efforts on his behalf were deficient in any way.

-4-

I don't find that [Petitioner] was inadequately represented by [trial counsel]. I find that just the opposite is true. [Trial counsel] was able to secure for him an offer much less than life in prison and I think [Petitioner] accepted that reality for what it was, as much as he didn't like it and as much as he still doesn't like it.

But, I think that he understood what he was doing when he took it and I don't find anything in there that indicates that he had anything other than just regrets that he had to do that much time.

So I find that [the trial court], thoroughly, interviewed [Petitioner] and thoroughly went over all of his rights, including discussions on lesser included offenses, everything that [Petitioner] was entitled to. And I find that [Petitioner] freely and voluntarily entered that plea, based upon that being his desire, his wish and not based upon any deficiencies by [trial counsel], or any lack of representation by [trial counsel] . . . .

Petitioner filed a timely notice of appeal of the denial of post-conviction relief.

*Analysis*

*Post-conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not re-weigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing by clear and convincing evidence that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996); *see also* T.C.A. § 40-30-110(f). In order to demonstrate deficient performance, the

petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, Petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. 466 U.S. 668, 694 (1984). However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial

court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542. The standard is the same for a "best interest" or *Alford* plea, that is, "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

Petitioner has failed to show that but for trial counsel's alleged deficiencies, he would have refused to plead guilty and insisted on going to trial. Petitioner testified that he felt he had no choice but to take the offer because trial counsel did not "give a damn" about his case. However, the transcript of the guilty plea hearing reflects that the trial court discussed the ramifications of the guilty plea with Petitioner. Petitioner was thoroughly questioned by the trial court to ascertain whether he understood the effects of the plea.

The plea hearing also indicates that Petitioner knew what he was doing, understood the plea, and agreed that it was what he wanted to do to resolve the case. Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary. Moreover, Petitioner has failed to prove he did not understand the consequences of his plea. Trial counsel testified that Petitioner was the one who wanted to seek a plea deal and that he reviewed the deal with Petitioner prior to its entry. The post-conviction court accredited the testimony of trial counsel. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact," and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). We find no evidence to preponderate against the findings of the post-conviction court. Further, Petitioner has failed to show that there is a reasonable probability that the proceedings would have concluded differently had counsel performed as Petitioner now claims he should have. *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 687). The evidence does not preponderate against the determination of the post-conviction court.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____

JERRY L. SMITH, JUDGE